1

2

3

4

5

6

7              **UNITED STATES DISTRICT COURT**

8                  **DISTRICT OF NEVADA**

9

10   AMERICAN HEAVY MOVING & RIGGING          )
     CO., a California corporation,           )
11                                            )   Case No.  2:04-CV-00933-JCM (GWF)
                                  Plaintiff,  )
12                                            )
     vs.                                      )   **ORDER**
13                                            )
     ROBB TECHNOLOGIES, L.L.C., et al.,       )
14                                            )
                                  Defendants. )
15   _____)

16          This matter is before the Court on Plaintiff's Renewed Motion to Modify Protective Orders

17   (#275), filed on April 21, 2006; Defendants Robb Technologies LLC and James McGhie's Opposition

18   to Plaintiff's Renewed Motion to Modify Protective Orders (#290), filed on May 17, 2006; Plaintiff's

19   Reply to Oppositions to Motion to Modify Protective Orders (#299), filed on May 30, 2006; and

20   Plaintiff's Reply to Oppositions to Motion to Modify Protective Orders Index of Items Submitted Under

21   Seal (#300), filed on May 30, 2006.  The Court heard this matter on June 8, 2006.

22                        **BACKGROUND**

23          This case involves a dispute between competitors in the design and manufacture of heavy haul

24   transport equipment.  Plaintiff American Heavy Moving and Rigging (AHM) alleges that Robb

25   Technology and its principal, James McGhie, contracted to provide engineering services in designing

26   and manufacturing AHM's heavy haul transport system ("AHM/HT System").  AHM alleges that it

27   gave Robb and McGhie access to AHM's proprietary information regarding its unique ideas and

28   designs for a heavy haul transport system superior to any heavy haul transport system then existing in

1  the marketplace.  AHM alleges that the designs and engineering for the AHM/HT System were to

2  remain the proprietary "work product" of AHM, and that this proprietary "work product" included  the

3  engineering expertise that Robb and McGhie gained in designing and engineering the AHM/HT

4  System.  AHM alleges that Robb, McGhie, and Co-Defendant Laron, Inc., which was bound by the

5  AHM-Robb agreement, breached the contract by subsequently designing and building a competing

6  heavy haul transport system for Sheedy Drayage Co. – the "RT System."

7      Defendants deny that they used any propriety information or trade secrets of AHM in designing

8  the RT System and contend that the common design features in the two systems were in the public

9  domain and cannot be considered the proprietary "work product" of AHM.  Secondly, Robb alleges that

10  the RT system incorporates uniquely different design components which are trade secrets of Robb and

11  which serve to distinguish the RT System from Plaintiff's AHM/HT System.   Robb and McGhie allege

12  that they would be substantially harmed if their trade secrets used in the design and manufacture of the

13  RT System were made available to AHM or its principals, who are their competitors.

14      The Court has dealt with the competing claims and allegations of the parties as follows:

15      1.      On July 29, 2004, the Court granted a protective order to Defendants which provided

16  that Defendants would segregate and mark as "CONFIDENTIAL - SUBJECT TO PROTECTIVE

17  ORDER AND SEAL - ATTORNEYS' EYES ONLY," "Defendants' Confidential Information" which

18  the protective order defined as "trade secrets or proprietary confidential information related to the RT

19  system, including, but not limited to, all drawings, photographs, descriptions of the RT system that

20  Defendants may be required to disclose over the course of this litigation to defend their interests."

21  *Order* (#42).  The order provided that material so designated would not be disclosed by Plaintiff's

22  counsel to Plaintiff without specific prior written consent of Defendants or by order of the Court.

23  Plaintiff was, however, permitted to disclose  "Defendants' Confidential Information" to Plaintiff's

24  retained expert witness. *Id.*

25      2.      On December 3, 2004, the Court entered an order appointing Dr. Kurt Marshek as

26  Special Master because the case involves highly technical issues and requires the making of "highly

27  specialized interpretations of fact" by someone who has "sufficient education, background and

28  experience."  *Order Appointing Special Master Pursuant to Federal Rule of Civil Procedure 53* (#90).

1   Pursuant to the order, the Special Master is to review the components of the AHM/HT system and the

2   RT system for the purpose of making recommended findings of fact whether any manufactured

3   components of the AHM/HT system are in the public domain or are of such a design and construction

4   that they are unique to the AHM/HT system.  The Special Master is to also review the RT system and

5   assess how it is different from the AHM/HT system.  As to manufactured components of the AHM/HT

6   system that are not in the public domain, the Special Master is to assess whether such manufactured

7   components are implemented identically in the RT system and also assess whether features or

8   functional elements in the RT system that provide the same functionality as elements in the AHM/HT

9   system were implemented through different means or technology.

10         Through subsequent court orders, the Special Master had been provided with the complete

11  drawings and specifications for both the AHM/HT and RT systems, including those portions of the RT

12  system that Defendants allege contain their confidential proprietary information and trade secrets.

13         In its Renewed Motion (#275), AHM argues that since the entry of the initial protective order,

14  *Order* (#42) on July 29, 2004, Defendants have marked nearly all of the documents they produced as

15  "Defendants' Confidential Information," thereby only making the documents available for examination

16  by Plaintiff's counsel and experts, but not by the principals of the Plaintiff.  Plaintiff argues that the

17  Court should modify the protective order(s) to require Defendants to make a showing that the

18  documents they have marked as confidential are, in fact, trade secrets or other confidential proprietary

19  information entitled to protection under the protective order.

20         At the time Plaintiff filed its Renewed Motion, Plaintiff's expert witness, Gerald McLelland,

21  had not executed the court approved undertaking to be authorized to review additional drawings and

22  specifications that the Court ordered Defendants to produce on January 19, 2006.  The Court also

23  indicated its intention to preclude Mr. McLelland from testifying in this case if he did not execute the

24  approved undertaking.  *See Order* (#222).  Mr. McLelland was reluctant to sign the required

25  undertaking based on his concern that claims might be brought against him for violating the protective

26  orders.  Plaintiff's Renewed Motion sought to modify the protective order so that Mr. McLelland would

27  be able to  render opinions in this case and review the additional documents produced by Defendants on

28  the grounds that the documents were not trade secrets, and he, therefore, did not need to execute the

3

1   court approved undertaking.  Shortly after Plaintiff filed its Renewed Motion, however, Mr. McLelland

2   executed the court-approved undertaking, and he has since had the opportunity to review all of the RT

3   system documents and drawings produced by Defendants, and render supplemental opinions.

4        Defendants dispute Plaintiff's assertion that they have marked nearly all of their produced

5   documents as "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER AND SEAL -

6   ATTORNEYS' EYES ONLY."  Defendants state that of the more than 10,000 documents produced in

7   this case, only 2116 documents have been marked as "CONFIDENTIAL - SUBJECT TO

8   PROTECTIVE ORDER AND SEAL - ATTORNEYS' EYES ONLY."  Defendants stated that they

9   have produced another 1,396 documents as "CONFIDENTIAL," but have not restricted AHM's

10  principals from reviewing these documents.  Defendants represent that the documents they have marked

11  as "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER AND SEAL - ATTORNEYS' EYES

12  ONLY" do, in fact, constitute their trade secrets and that they would suffer substantial competitive

13  injury if these documents were made available to Plaintiff's principal officers during discovery.

14  Defendants also state that they have been willing to consider exceptions to the protective order, on a

15  case-by-case, or document-by-document basis, to permit AHM's principals to review documents

16  marked for review by Plaintiff's attorneys and experts only, but that Plaintiff's counsel has declined this

17  offer and insisted that Plaintiff justify their claims of trade secret protection or "unseal" all the

18  documents.

19       Defendants also argue that Plaintiff's Renewed Motion is now moot because Plaintiff's expert

20  has had an opportunity to review all of the documents produced by Defendants.  Plaintiff contents that

21  the motion is not moot, however, because its principal officer, Earl Sutton, continues to be denied

22  access to Defendants' documents which deprives Plaintiff's counsel and its expert of his knowledge and

23  expertise in preparing the case.  Defendants, in return, argue that Mr. Sutton is not an expert in the

24  design or engineering of heavy haul transport equipment, and Plaintiff has not shown that his review of

25  the allegedly privileged documents is necessary for the preparation or presentation of Plaintiff's case.

26                              **DISCUSSION**

27       *Phillips v. General Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2003), states that "the law ...

28  gives district courts broad latitude to grant protective orders to prevent disclosure of materials for many

1   types of information, including *but not limited to,* trade secrets or other confidential research,

2   development, or commercial information. *See* Fed.R.Civ.Pro. 26(c)(7)." Rule 26(c) authorizes the

3   court to issue "*any* order which justice requires to protect a party or person from annoyance,

4   embarrassment, oppression or undue burden." This language confers broad discretion on the trial court

5   to decide when a protective order is appropriate and what degree of protection is required."

6       *Direct TV, Inc. v. Trone*, 209 F.R.D. 455, 459-60, (C.D.Cal. 2002), states that there is no

7   absolute privilege against discovery of a party's trade secrets and similar confidential information. The

8   party opposing discovery must show that the information is a trade secret or other confidential

9   information under Rule 26(c)(7) and that its disclosure would be harmful to the party's interest in the

10  property. Once this showing is made, the burden then shifts to the party seeking the discovery to show

11  that the information is relevant to a claim or defense in the lawsuit and is necessary to prepare the case

12  for trial. If the party seeking discovery shows both relevance and need, the court must weigh the injury

13  that disclosure might cause to the party opposing discovery versus the moving party's need for the

14  information. The courts generally hold that there is a greater likelihood of harm where disclosure of

15  trade secrets is sought in litigation between competitors. *Coca-Cola Bottling Co. of Shreveport, Inc. v.*

16  *the Coca-Cola Company*, 107 F.R.D. 288, 299 (D. Dela. 1985).

17      As Plaintiff argues, the party asserting trade secret protection has the burden to specifically

18  demonstrate to the court that the information is a trade secret. This case involves a dispute between

19  competitors regarding whether the design of highly technical components in the AHM/HT and RT

20  systems are based on designs or engineering knowledge already in the public domain, or on designs

21  unique to the AHM/HT system or whether some of the components in the RT system are Defendants'

22  own trade secrets or confidential information. Assuming that some of the components are Defendants'

23  trade secrets, they contend that they would be irreparably harmed if those secrets were provided to their

24  competitor, AHM, during discovery. Defendants argue that it would be impossible to "undo" the

25  knowledge that Plaintiff would acquire and the consequent harm to Defendants through such disclosure.

26      The Court's protective order (#42) attempts to reasonably accommodate the legitimate interests

27  of both parties by (1) assuring that Plaintiff is able to obtain the necessary discovery for use by its

28  counsel and expert witness in preparing their case and (2) by protecting Defendants' potentially

1  legitimate assertions of trade secrets by precluding the disclosure of those alleged trade secrets to

2  Plaintiff or its principals during discovery.  Because of the highly technical issues involved in this case,

3  the Court appointed a qualified engineer, Mr. Marshak, as special master to assist the Court by making

4  recommended findings of fact regarding these disputed claims and defenses.  Both parties have retained

5  engineering experts on these issues.  Plaintiff's expert, Mr. McLelland, has been provided with

6  complete drawings and specifications for both systems and has had the opportunity to physically inspect

7  both systems and render his opinions.

8        Were the Court to grant Plaintiff's Renewed Motion and require Defendants to demonstrate for

9  discovery purposes that each and every document that they have identified as a trade secret is entitled to

10  such protection, it would undermine the procedure established by District Judge's order appointing the

11  Special Master who has the engineering expertise to make recommended findings of fact on these very

12  issues.  Such a dual track procedure would clearly create the potential for inconsistent findings.  For

13  example, this Court might conclude, without benefit of the Special Master's knowledge and expertise,

14  that Defendants have not shown that a particular document, drawing or specification is a trade secret,

15  only to have the District Judge later conclude, based on the recommendations of the special master and

16  the evidence adduced at hearing or trial, that the information was, in fact, Defendants' legitimate trade

17  secret.  In such circumstances it would be difficult, if not impossible, to undo the harm caused to

18  Defendants by the incorrect disclosure of its trade secrets to Plaintiff.

19        Although Plaintiff is deprived of the ability to have its principals review the documents that

20  Defendants have asserted are their trade secrets, Plaintiff is not unfairly prejudiced in this regard.  First,

21  no showing has been made to the Court that Plaintiff's principal, Earl Sutton, is himself an engineering

22  expert, whose knowledge and expertise is necessary to the preparation of Plaintiff's case.

23  Second, Plaintiff has an engineering expert witness, Gerald McLelland, who pursuant to the court's

24  orders has been granted access to the complete drawings and specifications for both systems.  Third, an

25  impartial Special Master has been appointed to examine the technical evidence and make recommended

26  findings to the Court which includes the parties' competing claims of propriety information and trade

27  secrets.  Fourth, Defendants have represented their willingness to consider exceptions to particular

28  allegedly privileged documents to permit Plaintiff's principals to have access to the documents.

1    Although the Court cannot say that Defendants will be reasonably accommodating in this regard, this

2    option has not been pursued by the Plaintiff.  Finally, if Plaintiff is unable to obtain agreement from

3    Defendants that certain documents be made available to Plaintiff's principals, it has the option of

4    petitioning the Court to grant Mr. Sutton permission to review specific documents upon a showing that

5    his advice or testimony regarding that information is important and necessary to Plaintiff's preparation

6    or presentation of its case.[1]

7         The Court finds that the circumstances of this case are distinguishable from the decisions on

8    which Plaintiff places primary reliance:  *Contratto v. Ethicon, Inc.*, 227 F.R.D. 304 (N.D. Cal. 2005);

9    *Delford v. Schmid Products Co.*, 120 F.R.D. 648 (D. Md. 1987); and *Foltz v. State Farm Mut. Auto.*

10   *Ins. Co.*, 331 F.3d 1122 (9th Cir. 2003).  In *Contratto*, the plaintiff, a surgery patient, was injured by a

11   substance used to reduce adhesions and brought a products liability suit against the defendants who

12   manufactured, distributed and marketed the product.  In *Delford,* the plaintiff sued the manufacturer of

13   an intrauterine device which allegedly caused her to develop a pelvic infection necessitating a

14   hysterectomy and related surgical procedures.  In *Foltz,* the intervenors sought to discover confidential

15   and sealed information in a closed case involving claims and allegations similar to those being alleged

16   by the intervenors. The issues regarding trade secret or confidential proprietary information therefore

17   were purely discovery matters relating to evidence that movant's sought in order to prove their bodily

18   injury or insurance bad faith claims.   The existence of the trade secrets or confidential proprietary

19   information was not, however, the ultimate issue in the case, and the defendants could not demonstrate

20   the likelihood of harm by disclosure of their trade secrets to competitors.

21        The issues involving Defendants' alleged trade secrets are ultimate issues, or are intimately

22   related to the ultimate issues, to be decided in this case.  The Court's protective order has provided for

23   limited disclosure of the disputed documents to Plaintiff's counsel and its expert witness for use in

24   preparing and trying this case.  The Court concludes that entering an order that would require a separate

25

26        [1]The Court notes that such a showing is not made by the assertion contained in the affidavit of
27   Mr. McLelland that he finds nothing in the RT system drawings and specifications that qualifies as a
     trade secret.   Mr. McLelland's affidavit constitutes nothing more than a bare conclusion, with no
28   supporting reasons or analysis for his conclusion.

1   adjudication to decide trade secret issues for discovery purposes would cause undue burden and

2   expense and would conflict with the Court's order appointing the Special Master in this case (#90) and

3   potentially result in inconsistent decisions.  Accordingly,

4        IT IS HEREBY ORDERED that Plaintiff's Renewed Motion to Modify Protective Order (#275)

5   is **DENIED.**

6        DATED this 24th day of July, 2006.

7

8                   _____
                  GEORGE FOLEY, JR.

9                   U.S. MAGISTRATE JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28